# Bernstein *v.* Pennsylvania Railroad Company, Appellant.

*Negligence—Railroads—Crossings—Collision — Presumption in case of death—Contributory negligence—Judgment for defendant n. o. v.*

1. The doctrine that a person losing his life must be presumed to have exercised due care, has no application where the evidence shows affirmatively all the circumstances of the accident. There can be no presumption as against facts which are proven.

2. Where in an action against a railroad company to recover damages for the death of plaintiff's husband, who was killed by a locomotive while driving across defendant's tracks in a covered wagon with side curtains down, it appeared that after passing the house line, deceased had a clear view up the tracks, of six hundred feet, and was struck while crossing the first rail of the far track, by the engine of a freight train moving at a rate of ten or twelve miles an hour, he either must have seen or should have seen the approaching train, and was guilty of contributory negligence in proceeding, and judgment will be entered for the defendant n. o. v. notwithstanding the testimony of a witness who was in the wagon with deceased at the time, to the effect that they had stopped several feet on the near side of the first track, looked out around the curtain and saw no train approaching, and that they did not see it until it was on top of them and five or six feet away.

3. In such case where the engineer and the conductor, who were both in the engine at the time, testified that the train was going at a rate of ten or twelve miles an hour, the estimates of other witnesses amounted to no more than conjecture, and will be given no effect, where they are not inconsistent with the conclusion that the

wagon was driven upon the track when the train was so close at hand as to render the collision inevitable.

Argued Jan. 6, 1916. Appeal, No. 273, Jan. T., 1915, by defendant, from judgment of C. P. No. 2, Philadelphia Co., Dec. T., 1915, No. 3688, on verdict for plaintiff, in case of Rebecca Bernstein v. The Pennsylvania Railroad Company. Before MESTREZAT, POTTER, STEWART, FRAZER and WALLING, JJ. Reversed.

Trespass to recover damages for the death of plaintiff's husband. Before SULZBERGER, P. J.

The opinion of the Supreme Court states the facts.

Verdict for plaintiff for $10,000, and judgment thereon. Defendant appealed.

*Errors assigned,* among others, were in refusing to direct a verdict for defendant and in refusing to enter judgment for defendant n. o. v.

*Sharswood Brinton,* for appellant.—The presumption that defendant stopped, looked and listened was overcome by the circumstances: Connerton v. Delaware & Hudson Canal Co., 169 Pa. 339; Seamans v. Del., Lack. & Western R. R. Co., 174 Pa. 421; Blotz v. Lehigh Val. R. R. Co., 212 Pa. 154; Weikel v. Philadelphia & Reading Ry. Co., 237 Pa. 524; Hess v. Williamsport and North Branch R. R., 181 Pa. 492; Unger v. Philadelphia, Balto. & Wash. R. R. Co., 217 Pa. 106; Hamilton v. Central R. R. of N. J., 227 Pa. 137.

*William F. Rorke,* for appellee.—The case was for the jury: Hugo v. Balto. & Ohio R. R. Co., 238 Pa. 594; Schmidt v. Philadelphia & Reading Ry. Co., 244 Pa. 205; Bush v. Philadelphia & Reading Ry. Co., 232 Pa. 327; Roberts v. Delaware & Hudson Canal Co., 177 Pa. 183; Buckman v. Philadelphia & Reading Ry. Co., 232 Pa. 351; Barthelmas v. Lake Shore & Mich. Southern R. R.

Co., 225 Pa. 597; Cromley v. Penna. R. R. Co., 211 Pa. 429; Miller v. Lehigh Valley R. R. Co., 58 Pa. Superior Ct. 558; Kreamer v. Perkiomen R. R. Co., 214 Pa. 219; Fritz v. New York, Chicago & St. Louis R. R. Co., 236 Pa. 448; Irwin v. Pittsburgh & Lake Erie R. R. Co., 243 Pa. 7.

OPINION BY MR. JUSTICE POTTER, March 13, 1916:

The plaintiff here sought to recover damages for the death of her husband, upon the theory that it resulted from the negligence of the defendant company. The husband, while driving with a companion in a covered wagon, attempted to pass over the railroad tracks at a grade crossing at the intersection of Twenty-fifth and Morris streets, in the City of Philadelphia. Shortly after seven o'clock on the evening of May 21, 1914, he was driving eastwardly upon Morris street, and was struck by an engine of a freight train running north upon Twenty-fifth street. The collision occurred upon the second track. The defendant was charged with negligence in not keeping a watchman on duty at the crossing at that time; it was also asserted that the headlight on the engine was not burning, and that no bell was rung, and no whistle blown, and that the train was running too fast. While the evidence, tending to show negligence in these respects, was not very conclusive, yet the question was submitted to the jury, and of that appellant does not complain. Its counsel does, however, strongly urge in its behalf that the contributory negligence of the deceased was so apparent, that the trial judge should for that reason have given binding instructions in favor of the defendant. The evidence clearly shows that the deceased approached the crossing, driving in a covered wagon with the curtains down, and that the distance over which he had to pass from the house line on the west, to the first rail of the first track, was forty-two feet. A witness, Clymer, who sat in the wagon seat with the deceased, testified that after passing the house line there

was a clear view down the tracks in the direction from
which the train came, for about a block and a half, or
probably a distance of six hundred feet.   The witness
said that Mr. Bernstein was driving, and that as they
cleared the house line he stopped, and when they were
about seven or eight feet away from the engine track,
he stopped again.   He testified that they drove over the
first track and upon the first rail of the second track,
when the engine came upon them; he said that it was
only a few feet away when he first saw it.   A watch-box
stood on the south side of Morris street and near the
track.   But this watch-box was elevated, and was sup-
ported by a net work.   As has been stated, it appeared
that after leaving the house line there was a space of
some twenty-five feet, in which there was afforded a clear
view down the tracks to the south for a block, or to
Moore street; at that point there was a fence some five or
six feet high, extending to a point some ten or twelve
feet from the track.   But we gather from the evidence
that the fence was not high enough to hide the view of
an approaching locomotive coming from that direction,
even to one standing near the house line; and to one at
or near the first track, the view was unobstructed for a
considerable distance beyond the fence.   Between the lo-
cation of the watch-box and the line of the first track
there was also a clear view of the tracks to the south.
Yet the witness, Clymer, who was at the time of the acci-
dent seated beside the driver in the wagon, testified that
they drove over the first track, and over the first rail of
the second track, before they noticed the engine, and then,
as he said, it was right on top of them, only five or six
feet away.   The driver then attempted to swing his horse
away from the engine, to the north, but was caught.
It is of no practical use to speculate as to the distance
at which the engine may have been when Mr. Bernstein
drove his wagon upon the first rail of the second track,
for the event showed that the engine was then right
there; and that horse and engine arrived at the spot

where the crossing intersected the second line of track, at substantially the same instant. The witness says that neither he nor Mr. Bernstein saw the engine. Why they did not do so, was unexplained. It was there, and they needed only to lean forward, after passing the house line, and look around the curtain to see the engine, so close at hand, that the collision came in a few seconds. As was said in Carroll v. Penna. R. R. Co., 12 W. N. C. 348, 349, and since repeated in numerous cases, "it is in vain for a man to say that he looked and listened, if, in spite of what his eyes and ears must have told him, he walked directly in front of a moving train." Evidently, in this case, Mr. Bernstein must have driven upon the tracks without looking, in spite of the assertion to the contrary, for the horse had but just stepped over the first rail of the second track, when it was struck. The engine was drawing a long freight train, and was running slowly. According to the testimony of the conductor the train was running at the rate of eight to ten miles per hour at that point. The engineer testified definitely to the same rate of speed. These men were both upon the engine at the time, and their positions and experience were such as to enable them to judge with considerable accuracy as to the speed of the train. The estimates of other witnesses upon this matter amounted to nothing more than conjecture. The conductor testified that as the train approached the crossing in question, he was seated in the cab, on the left hand side, ringing the engine bell, and that when the engine was about eighty feet from the crossing the wagon came swiftly out from the house line to the crossing, and the engine hit the front wheel of the wagon, and separated it from the horse. While no other testimony fixed distances so definitely as this, yet none of it was inconsistent with the conclusion that the wagon was driven upon the tracks when the train was so close at hand, as to render the collision inevitable. We do not see that the testimony admits of any other conclusion being reasonably drawn therefrom.

Applying the law to circumstances very similar in Myers v. Balto. & Ohio R. R., 150 Pa. 386, we said (p. 390): "The fact that four or five seconds after he says he looked and listened, he was struck by a train that must have been plainly visible and almost on him at the time he alleges he looked, is so palpably and absolutely irreconcilable with the truth of his statement that he did stop, look both ways, and listen, before driving upon the crossing, that it is trifling with justice to permit a jury to find that it is true."

Arguing that this case was properly submitted to the jury, counsel for appellee cites and relies upon the decision in Schwartz v. Del., Lack. & Western R. R. Co., 211 Pa. 625, as sustaining his contention. But in that case, the evidence showed a rapidly moving passenger train, which could cover the distance from which it could be seen approaching the crossing, before one who had stopped at the proper place to look, would have time to cross the tracks in safety. Nothing of the kind was shown, or could reasonably be inferred from the testimony in this case. There was no evidence tending to support the theory that this was a rapidly moving train which was not in view from the point some twenty to twenty-five feet east of the house line, where the wagon should have been stopped to give its occupants a clear view of the tracks from the direction in which the train came. On the contrary, the very short distance, probably less than twenty-five feet, which the horse travelled from that point, until it collided with the engine of the freight train, showed conclusively that the engine must have been in plain sight during those few seconds of advance, and there could have been no reasonable excuse for not seeing it, until, as Mr. Clymer, the principal witness for plaintiff, said, the engine was on top of them, and was only five or six feet away.

There was no room in this case for the application of the doctrine that the deceased, having lost his life, must be presumed to have exercised due care; this for the

reason that the evidence showed affirmatively all the circumstances of the accident.   The companion of the deceased, who was sitting upon the same seat with him in the wagon, described the occurrence in detail, and there were a number of other witnesses, who saw and described the whole affair.   There can be no presumption as against facts which are proven.

The assignments of error are sustained, the judgment is reversed, and is here entered for the defendant.