## Ferguson *v.* Burge, Appellant.

Argued November 17, 1960. Before RHODES, P. J., WRIGHT, WOODSIDE, ERVIN, WATKINS, and MONTGOMERY, JJ. (GUNTHER, J., absent).

*Allen N. Brunwasser*, for appellant.

*Harry R. Levy*, for appellees.

OPINION BY MONTGOMERY, J., December 14, 1960:

This is an appeal from a verdict and judgment in an assumpsit action commenced by the plaintiffs-appellees to recover on a written and oral contract for the drilling of a water well. Defendant-appellant filed a counterclaim which alleged that the contract was not performed in a workmanlike manner and that plaintiffs-appellees caused damage to his property by cracking a sidewalk while in the process of drilling. The contract specified that the plaintiffs were to drill to a

sufficient depth to produce such water as was available, not to exceed 160 feet except by further agreement of the owner of the property. The consideration was $2.50 per foot, plus an agreed price for casing and pumping equipment, payable upon completion of the well.

There was insufficient water discovered when the original depth contracted for was reached, and the defendant ordered additional drilling to a depth of 375 feet. The well was completed to the new depth on April 1, 1954, and the total charge for drilling, casing, and pumping equipment amounted to $1,354.50. For over one year the well and pump functioned properly and there was no complaint. On May 22, 1955, defendant by letter requested the plaintiffs to credit an enclosed check in the amount of $1,000.00 to his account and promised to pay the balance of $354.50 within 30 days. Shortly after this letter and payment, defendant complained that the well was not producing properly. Explaining the cause of the disturbance to be a cave-in resulting in sediment falling to the bottom of the well and clogging the end of the pipe, a common occurrence, the plaintiffs had the valve cleaned and the pipes raised at their own expense.

After the thirty-day period had elapsed, the plaintiffs demanded payment of the balance and, upon defendant's refusal to comply, they filed suit before an alderman. Judgment was entered for the plaintiffs. An appeal was taken to the County Court of Allegheny County, where a jury trial resulted in a verdict for the plaintiffs in the amount of $471.32, the balance of the account, plus interest.

Defendant advocates the proposition that a written contract to drill a water well, not to exceed a limited depth, to produce sufficient water "as is available" implies a guarantee of a suffiicient and continuous production of water at the surface. It is clear from a

reading of the contract that the meaning of the term "available" refers to the depth of drilling and not to the quantity or quality of the water discovered. The plaintiffs could have fulfilled the contract by reaching contaminated water or no water under the terms of the contract.

In *Book v. New Castle Wire Nail Company*, 151 Pa. 499, 25 A. 120, where a contract for drilling a well guaranteed to get water from the bedrock unless they should find good water at a lesser depth, it was held that the contract was satisfied when the water was obtained from the bedrock, even though it was unusable, and that it could not be construed as guaranteeing good water or as presenting a case of ambiguity in the meaning of words therein.

This reasoning is applicable to the instant case. The appellant argues that, because sufficient water was not discovered within the limited depths agreed on, the appellees have failed to complete their contractual undertaking and, consequently, the appellant need not pay anything. The insertion of such a material condition into a contract requires the clearest evidence that such was the actual agreement of the parties and it is obvious that the parties did not intend that plaintiffs should perform this work without remuneration if sufficient water was not found.

Although there is a lack of Pennsylvania decisions on the subject, it is well settled law that a contract to dig a well presents a different question from that presented in contracts by manufacturers or builders, as in the cases cited by the appellant, and a different rule is applicable thereto. While there is an implied understanding in the contracts of manufacturers or builders that the completed subject of the contract shall be reasonably suitable for its purpose, this implication is based upon the supposed superior knowledge of the manufacturer or builder. However, since the quantity,

if any, and the quality of water a well will furnish is unknown to both parties, there is no implication, if the contract is silent in these respects, that the well when completed will be a producing well; or, if it is productive, there is no implication as to the quantity or quality of water to be obtained therefrom. 55 A.L.R. 1550 (f).

The sole question proposed by the instant case is whether the installation of the well was done in a workmanlike manner. The evidence leads us to the conclusion that it was and the jury has found that it was. Defendant offered no testimony as to improper drilling or improper equipment or faulty workmanship but admitted the production of water for a period of at least one year after the well's completion and the restoration of the flow of water after raising of the piping. The entire theory of the defendant's case was based upon a general complaint as to the ultimate result unrelated to the performance of the contract or any obligation thereunder.

Defendant also failed to show that the plaintiffs were responsible for the crack in his sidewalk. We are in complete agreement with the lower court that in a drilling operation of this type it is quite likely that some injury might result to the surrounding property but that this is a risk assumed by the property owner and that, unless plaintiffs can be shown to have acted negligently or to have failed to take reasonable precautions to prevent damage, defendant may not recover.

This is clearly the law, and the lower court was correct in stating to the jury that the counterclaim was insufficient. *Kirby v. Carlisle*, 178 Pa. Superior Ct. 389, 116 A. 2d 220. We therefore can find no error in the charge of the lower court on the effect of the appellant's proof of counterclaim or his failure to show that the well was completed in a workmanlike manner; and

it is our opinion that the evidence supported the verdict of the jury.

Judgment affirmed.