J-A06008-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| ERIC COLT | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MORTON BUILDINGS, INC. | : | No. 1475 WDA 2024 |
| v. | : | |
| | : | |
| | : | |
| | : | |
| GUNTON CORPORATION, | : | |
| DISTRIBUTOR FOR PELLA WINDOWS | : | |
| AND DOORS, AND PELLA WINDOWS | : | |
| AND DOORS, INC. | : | |

Appeal from the Order Entered March 3, 2025
In the Court of Common Pleas of Westmoreland County Civil Division at
No(s):  22CI00560

BEFORE:  OLSON, J., MURRAY, J., and BECK, J.

MEMORANDUM BY OLSON, J.:                    **FILED: June 18, 2026**

Appellant, Eric Colt, appeals from the March 3, 2025 order entered in the Court of Common Pleas of Westmoreland County that made final the trial court's October 25, 2024 order, which sustained the preliminary objections filed by Morton Buildings, Inc. ("Morton Buildings") to Appellant's fourth amended complaint.  Upon review, we vacate the October 25, 2024 order and remand this case for further proceedings.

The trial court summarized the procedural history as follows:

[Appellant] brought this civil action against [Morton Buildings] regarding the construction of a home located [in] New Florence, [Westmoreland County,] Pennsylvania.   [Appellant] alleged

numerous issues with the construction of the home that he noticed after [Morton Buildings] completed construction. The initial complaint was filed on February 17, 2022. [Morton Buildings] responded to the complaint with preliminary objections filed on October 19, 2023. [Appellant] decided to address the preliminary objections by filing an amended complaint on October 30, 2023. This resulted in a second set of preliminary objections [being filed on November 13, 2023], and a second amended complaint [being filed on December 14, 2023]. The parties then came before [the trial] court for a ruling on [Morton Buildings'] third set of preliminary objections[, filed on December 28, 2023,] to the second amended complaint. After briefing and oral argument, [the trial] court entered an order on April 19, 2024[,] sustaining [Morton Buildings'] preliminary objections and ruling that [Appellant's] second amended complaint was legally insufficient and failed to properly set forth its claim to put [Morton Buildings] on notice of whether the claim was based in contract or negligence. [Appellant] was again given an opportunity to amend his complaint, which he did on two occasions before the parties returned before [the trial] court on [Morton Buildings'] fifth set of preliminary objections to [Appellant's] fourth amended complaint.[1]

At this point in the proceedings, [Appellant] made it clear that his claim was based in negligence, not contract. As a result, [Morton Buildings' fifth set of] preliminary objections [asserted] the gist of the action doctrine to bar [Appellant's] negligence claim [on the ground] that the allegations only supported a breach of a contractual duty.[2] After briefing and oral argument, [the trial]

_____

[1] On May 20, 2024, Appellant filed a third amended complaint. In response, Morton Buildings filed preliminary objections to the third amended complaint on June 10, 2024. Appellant filed a fourth amended complaint on July 9, 2024, and a supplement to the fourth amended complaint on July 15, 2024, which included a verification statement. Morton Buildings filed its fifth set of preliminary objections to Appellant's fourth amended complaint on July 25, 2024.

[2] The "gist of the action" doctrine, as discussed more fully *infra*, "provides that an alleged tort claim against a party to a contract, based on the party's actions undertaken in the course of carrying out a contractual agreement, is barred when the gist [(*i.e.*, "the ground of a legal action" or "the act of the offending

- 2 -

court entered an order on October 25, 2024[,] sustaining [Morton Buildings'] preliminary objection in the nature of a demurrer, and finding that the gist of the action doctrine barred [Appellant's] negligence claim.

Trail Court Opinion, 1/17/25, at 1-2 (extraneous capitalization omitted).

On November 4, 2024, Appellant filed a motion asking the trial court to reconsider its October 25, 2024 order that sustained Morton Buildings' fifth set of preliminary objections and dismissed Appellant's fourth amended complaint with prejudice. Morton Buildings filed a response on November 12, 2024. On November 22, 2024, Appellant filed a notice of appeal, purporting to challenge the order entered on October 25, 2024. As discussed *infra*, that notice of appeal was premature because it challenged the October 25, 2024 order and that order was not a final, appealable order. On November 26, 2024, the trial court denied Appellant's motion for reconsideration.

On January 15, 2025, in a *per curiam* order, this Court issued a rule against Appellant to show cause why the appeal should not be quashed because the October 25, 2024 order was not a final, appealable order since it did not dispose of the claims against Gunton Corporation and Pella Windows and Doors, Inc., two defending parties identified as "indispensable" litigants in Appellant's complaint. *Per Curiam* Order, 1/15/25. On January 29, 2025,

_____

party, by means of which the injury is inflicted")] or gravamen [(*i.e.*, "the substantial point [] of a claim, grievance, or complaint")] of the cause of action stated in the complaint, although sounding in tort, is, in actuality, a claim against the party for breach of its contractual obligations." **Bruno v. Erie Insur. Co.**, 106 A.3d 48, 53 (Pa. 2014).

- 3 -

Appellant filed a response, with this Court, requesting that "the trial court be given an opportunity to amend [the October 25, 2024 order] and dismiss all the parties" so that the appeal could continue. Appellant's Response, 1/29/25, at ¶11. On February 7, 2025, in a *per curiam* order, this Court stayed the appeal for sixty days and directed Appellant to obtain a final, appealable order that dismissed all of the parties. *Per Curiam* Order, 2/7/25. On March 13, 2025, Appellant filed, with this Court, a stipulation and consent order entered in the trial court on March 4, 2025, that dismissed, with prejudice, Gunton Corporation and Pella Window and Doors, Inc. Notification of Final Order, 3/13/25, at Exhibit B. In an April 15, 2025 *per curiam* order, this Court lifted the stay on the appeal. *Per Curiam* Order, 4/15/25.

Appellant raises the following issues for our review:

1. Did the trial court commit an error of law in improperly applying the legal standard for sustaining preliminary objections as applied to the facts as alleged in [Appellant's] fourth amended complaint?

2. Did the trial court commit an error of law in sustaining [Morton Buildings'] fifth set of preliminary objections and dismissing [Appellant's] fourth amended complaint based upon the gist of the action doctrine?

Appellant's Brief at 10 (extraneous capitalization omitted).

Preliminarily, we address the procedural posture of the case to determine whether, or not, this appeal validly invoked the jurisdiction of this Court. *Linde v. Linde*, 222 A.3d 776, 782 (Pa. Super. 2019) (stating, "the question of appealability implicates the jurisdiction of this Court[, and] the

- 4 -

issue may be raised by this Court *sua sponte* (citation and original brackets omitted)). "[A]n appeal may be taken as of right from any final order of a government unit or trial court." Pa.R.A.P. 341(a). A "final order" is defined as an order that, *inter alia*, "disposes of all claims and of all parties[.]" Pa.R.A.P. 341(b). In the case *sub judice*, Appellant filed a notice of appeal on November 22, 2024, challenging the October 25, 2024 order that sustained Morton Buildings' fifth set of preliminary objections and dismissed, with prejudice, Appellant's cause of action against Morton Buildings. The October 25, 2024 order was interlocutory in nature and not a final, appealable order because it did not dispose of all the parties, namely Gunton Corporation and Pella Windows and Doors, Inc. As such, Appellant's November 22, 2024 notice of appeal was premature.[3] Ultimately, the October 25, 2025 order was made final and appealable when the trial court, on March 4, 2025, entered a stipulation and consent order that dismissed, with prejudice, the remaining parties, Gunton Corporation and Pella Windows and Doors, Inc.[4] ***See***

_____

[3] The October 25, 2024 order was neither appealable as of right nor by permission. **See** Pa.R.A.P. 311; **see also** Pa.R.A.P. 312.

[4] "[C]ase law [] defines a consent order as 'an agreement by the parties, sanctioned by the [trial] court, rather than a judgment.'" ***Prensky v. Talaat***, 291 A.3d 25, 30 (Pa. Super. 2023) (*citing* ***Laird v. Clearfield & Mahoning Ry. Co.***, 916 A.2d 1091 (Pa. 2007), *appeal denied*, 303 A.3d 1056 (Pa. 2023). We are cognizant that "[a]n appeal from a consent order is permitted only if (1) the consent order explicitly permits it, or (2) the record reveals the parties anticipated appeal." ***Prensky***, 291 A.3d at 30.

Pa.R.A.P. 341 (authorizing appeals from final orders); *see also* Pa.R.A.P. 341(b)(1) (defining a final order as one that "disposes of all claims and of all parties"). Pursuant to Pennsylvania Rule of Appellate Procedure 905(a)(5), we deem Appellant's notice of appeal to have been filed on March 4, 2025, and we turn to the issues raised by Appellant on appeal. *See* Pa.R.A.P. 905(a)(5) (stating, "[a] notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof").

Appellant's issues collectively challenge the trial court's order that sustained Morton Buildings' preliminary objection in the nature of a demurrer and dismissed Appellant's fourth amended complaint with prejudice.

> Our standard of review of an order of the trial court overruling or sustaining preliminary objections is to determine whether the trial court committed an error of law. When considering the appropriateness of a ruling on preliminary objections, [we] must apply the same standard as the trial court.
>
> Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint. When considering preliminary objections, all material facts set forth in the challenged pleadings are admitted as true, as well as all inferences reasonably deducible therefrom. Preliminary objections which seek the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief. If any doubt exists as to whether a demurrer should be sustained, it

---

In the case *sub judice*, Appellant filed a notice of appeal in November 2024, prior to the entry of the stipulation and consent order in March 2025, that dismissed, with prejudice, the remaining parties from Appellant's cause of action. As such, the parties plainly anticipated an appeal upon entry of the stipulation and consent order.

should be resolved in favor of overruling the preliminary objections.

***Fiedler v. Spencer***, 231 A.3d 831, 835-836 (Pa. Super. 2020) (original brackets and citation omitted), *appeal denied*, 241 A.3d 335 (Pa. 2020); ***see also Poteat v. Asteak***, 350 A.3d 198, 201 (Pa. Super. 2025) (stating, "[t]he question of whether a complaint is legally insufficient [pursuant to Pennsylvania Rule of Civil Procedure 1028(a)(4)] involves a pure question of law, such that our standard of review is *de novo*"); ***Bruno***, 106 A.3d at 56. "Preliminary objections in the nature of a demurrer require the [trial] court to resolve the issues solely on the basis of the pleadings[. No] testimony or other evidence outside of the complaint may be considered to dispose of the legal issues presented by the demurrer." ***Lugo v. Farmers Pride, Inc.***, 967 A.2d 963, 966 (Pa. Super. 2009) (citations omitted), *appeal denied*, 980 A.2d 609 (Pa. 2009).

On appeal, Appellant asserts that, "[a]ccepting all facts pled as true, the [fourth amended complaint] sets forth [viable] causes of action for breach of contract, negligence[,] and breach of warranty." Appellant's Brief at 19. Appellant further contends that the trial court erred in applying the gist of the action doctrine so as to dismiss claims which arose outside the parameters of the parties' contract, namely damage to Appellant's excavator. ***Id.*** at 23-24. Alternatively, Appellant argues that the trial court abused its discretion when it dismissed Appellant's cause of action with prejudice and, instead, should have granted Appellant leave to file a fifth amended complaint. ***Id.*** at 17.

In sustaining Morton Buildings' preliminary objection in the nature of a demurrer, the trial court read Appellant's complaint as asserting a single cause of action sounding in negligence and dismissed it pursuant to the gist of the action doctrine. The trial court found that, "[a]lthough [Appellant] framed his claim as arising from negligent workmanship rather than from violations of the contract terms between the parties, each of the alleged issues raised by [Appellant] regarding the construction of the home set forth in the fourth amended complaint, if taken as true, would arise through a violation of the contracted terms between the parties" and, as such, Appellant negligence claim violated the gist of the action doctrine. Trial Court Order, 10/25/24, at ¶1 (extraneous capitalization omitted). The trial court further explained that

> viewing the facts in the light most favorable to [Appellant], the law provided with certainty, through the application of the gist of the action doctrine, that no recovery is possible for [Appellant. Appellant] alleges that after completion of his home construction, he noticed defects in the negligent workmanship of the home. He details the alleged negligent workmanship in Paragraph 9 (a) - (g) of his [fourth amended] complaint, stating that the concrete pockets for the steal I-beams were ¾ inches too high, the metal siding on the outside of the house was too low, the windows were the wrong height and were not trimmed or installed properly, and the ceiling was not level. A review of the contract between the parties, attached as Exhibit 1 to [Appellant's] fourth amended complaint, shows that [Morton Buildings owed a duty to supply contractually-compliant building features and components and to rectify or redress any alleged flaws]. The specifications for every portion of the home were listed, and if [Morton Buildings] did not satisfy those specifications, then [Morton Buildings] would have breached the contract. There is no broader social duty that requires [Morton Buildings] to abide by the contract terms, as required for a negligence claim, and the design and completion of the home to the specifications alleged by [Appellant] would not exist without the contract. Therefore, the gist of the action

> doctrine bars [Appellant's] negligence claim and, since no recovery is possible as a result of that bar, [Morton Buildings] was entitled to [relief on] its request for a demurrer.

Trial Court Opinion, 1/17/25, at 6-7.

As discussed *supra*, our Supreme Court in **Bruno**, ***supra***, explained that the gist of the action doctrine "provides that an alleged tort claim against a party to a contract, based on the party's actions undertaken in the course of carrying out a contractual agreement, is barred when the gist [(*i.e.*, "the ground of a legal action" or "the act of the offending party, by means of which the injury is inflicted")] or gravamen [(*i.e.*, "the substantial point [] of a claim, grievance, or complaint")] of the cause of action stated in the complaint, although sounding in tort, is, in actuality, a claim against the party for breach of its contractual obligations."[5] **Bruno**, 106 A.3d at 53; ***see also Swatt***, 342 A.3d at 41. Stated simply, "[t]he gist of the action doctrine precludes plaintiffs from re-casting ordinary breach of contract claims into tort claims." ***Spiritrust Lutheran v. Wagman Constr., Inc.***, 314 A.3d 894, 908 (Pa. Super. 2024) (original quotation marks omitted), *citing*, ***Mirizio v.***

---

[5] Although the **Bruno** Court addressed "**how** the gist of the action doctrine should be employed to ensure that a party does not bring a tort claim for which is, in actuality, a claim for a breach of contract," (***see Bruno***, 106 A.3d at 60 (emphasis added)), as this Court in **Swatt**, ***supra***, noted, "the broader issue of whether the 'gist of the action doctrine' ever actually existed or should continue to be a part of Pennsylvania law was not before the High Court." **Swatt**, 342 A.3d at 51. Because our Supreme Court has not denounced the gist of the action doctrine in Pennsylvania jurisprudence, we are required to examine its applicability to the case *sub judice*.

*Joseph*, 4 A.3d 1073, 1079 (Pa. Super. 2010), *appeal denied*, 14 A.3d 829 (Pa. 2010).

Relying, in part, on earlier Supreme Court decisions in *Zell v. Arnold*, 2 Pen. & W. 292, 1830 WL 3261 (Pa. 1830) and *McCahan v. Hirst*, 7 Watts 175, 1838 WL 3224 (Pa. 1838), the *Bruno* Court explained that, in applying the gist of the action doctrine, the fact that "a cause of action between two parties to a contract is based on the actions of the defendant undertaken while performing his [or her] contractual duties[] does not[, by itself,] automatically characterize the action as one for breach of contract." *Bruno*, 106 A.3d at 63. "[T]he nature of the duty breached, as alleged in the plaintiff's pleadings, is determinative of [the applicability of] the gist of the action [doctrine. Actions] arising 'directly' from an alleged breach of a contractual duty were to be regarded as being in contract[. Actions] based on an alleged breach of a contracting party's separate 'collateral' duty to perform a contractual obligation with skill and diligence were to be considered as being in tort." *Id.* In other words,

> whenever a plaintiff's complaint sets forth allegations which substantially constitute assertions of a defendant's complete failure to perform duties originating from a contract - a nonfeasance - the plaintiff's action will be deemed to be a breach of contract[. If] the allegations substantially concern the defendant's negligent breach of a duty which exists independently and regardless of the contract - a misfeasance - then the action will be regarded as one in tort.

*Id.* Thus, "the nature of the duty alleged to have been breached, as established by the underlying averments supporting the claim in a plaintiff's

- 10 -

complaint[ is] the critical determinative factor in determining whether the claim is truly one in tort, or for breach of contract." *Id.* at 68; *see also Swatt*, 342 A.3d at 51 (stating, "*Bruno* re-calibrated the gist-of-the-action doctrine as a test based on the duty that the defendant allegedly breached"); *Spiritrust*, 314 A.3d at 908 (stating, "courts must focus on how the plaintiff's pleadings described the defendant's legal duties"); *Patel v. Kandola Real Est., LP*, 271 A.3d 421, 431 (Pa. Super. 2021). "[T]he mere labeling by the plaintiff of a claim as being in tort, *e.g.*, for negligence, is not controlling." *Bruno*, 106 A.3d at 68. Similarly, "the mere existence of a contract between two parties does not, *ipso facto*, classify a claim by a contracting party for injury or loss suffered as the result of actions of the other party in performing the contract as one for breach of contract." *Id.* at 69.

> If the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract - *i.e.*, a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract - then the claim is to be viewed as one for breach of contract. If, however, the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort.

*Id.* (citations omitted); *see also Spiritrust*, 314 A.3d at 908-909.

In his fourth amended complaint, Appellant asserted that Morton Buildings' "work was performed in a poor, improper, and [] unworkmanlike manner which constitutes negligence." Fourth Amended Complaint, 7/9/24,

at ¶15. In particular, Appellant set forth the "discovered defects in negligent workmanship" as follows:

a. The concrete pockets for the steal I-beam [were] approximately three-quarters [] of [an] inch too high and caused the floor joints to [] be higher than designed;

b. The metal siding on the outside of the home was [] constructed too low at the bottom of the structure and[,] thus[,] obstructed the installation of the decking for the building;

c. [Appellant] had to pour an additional three-quarters [] of an inch in concrete across all of the door thresholds for the entry of the build[ing] in an attempt to remedy [the] error;

d. The Pella windows installed by [Morton Buildings] were[ installed improperly] and continue to bow due to improper installation by [Morton Buildings];

e. [Appellant] discovered several windows were not wrapped and/or trimmed properly with some windows displaying bare wood that either has begun [to,] or will eventually[,] leak;

f. [Appellant] discovered only four [] windows [that were] of the correct height and discovered approximately nine [] windows[, as] measured from the second floor[, that when] compared to the four [windows] that are in the correct range[, to be] deficient [in height] from one [] to three [] inches using a 360 astericks laser level;

g. The ceiling of the build[ing] is out of level with one area of the ceiling dropping three[-]fourths of an inch across four [] feet of length.

*Id.* at ¶9. Appellant further alleged that he

found several issues with the windows, of which some were corrected, however, the worst issues were never addressed as these were found after [Morton Buildings] left the site and [Morton Buildings] never sent [a] crew[] to repair the same, despite promising to do so. As a result, [Appellant] repaired broken latches, cut screens and [] found that the first-floor windows were framed too low. Additionally, the windows installed by [Morton Buildings] were not installed with tempered glass, which is

required in order to pass [a] building code [inspection] in this jurisdiction. Moreover, the kitchen window was framed so low to the point that the window would have been below the countertop height.

*Id.* at ¶11. "Examples of [Morton Buildings'] poor, improper, and unworkmanlike manner[,]" according to Appellant, included:

[Appellant] found [t]obacco spit in the insultation on the south[-]facing wall in the master bedroom area[. Morton Buildings'] crew didn't bring proper equipment to reach and work on the interior of the house and had to take the scaffolding owned by [Appellant] from the basement to be used in the upstairs portion of the interior of the home[.]

*Id.* at ¶15. Finally, Appellant asserted that Morton Buildings' crew "damaged Appellant's] excavator and did not notify [him]." *Id.* In particular, Appellant alleged that Morton Buildings "had a vehicle that struck [his] excavator which was parked near the back corner of the build[ing] and caused approximately $3,000.00 in damages." *Id.* at ¶13.

We first consider whether, or not, Appellant's fourth amended complaint alleged facts that set forth viable claims for breach of contract or warranty. To prove such claims, Appellant needed to allege an enforceable contract with Morton Buildings, the breach of a contractual term by Morton Buildings, and damages resulting from said breach. *See Meyer, Darragh, Buckler, Bebenek, and Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.*, 137 A.3d 1247, 1258 (Pa. 2016) (stating, "[it] is well-established that three elements are necessary to plead a cause of action for breach of contract: (1)

the existence of a contract, including its essential terms, (2) a breach of the contract; and, (3) resultant damages").

Appellant contracted with Morton Buildings to construct a single family residence that was 30 feet wide, 18 feet and 4 inches in height, and 60 feet in length and having a 4/12 roof pitch, using Fluoroflex 1000 siding and roofing hi-rib steel materials and Pella windows. **Id.** at Exhibit 1. As part of the construction contract, Morton Buildings warranted to Appellant that "the building which is the subject of this sale will be free from defects in material **and workmanship** for the duration of one [] year from substantial completion of the project." **Id.** (emphasis added) As such, Morton Buildings provided an express warranty that the work would be completed in a workmanlike manner.[6] The allegations contained in Appellant's fourth

_____

[6] Notwithstanding that the contract expressly set forth a warranty (or agreement) that Appellant's home would be constructed in a workmanlike manner, our Supreme Court long-ago held that a "builder-vendor impliedly warrants that the home he [or she builds and sells] is constructed in a reasonably workmanlike manner and that it is fit for the purpose intended – habitation." **Elderkin v. Gaster**, 288 A.2d 771, 777 (Pa. 1972); *see also Hosler v. Tweedlie*, 306 A.3d 361, 371 (Pa. Super. 2023) (stating, "the doctrine of implied warranty of habitability, which requires a builder-vendor to warrant that the construction of the new home was performed in a reasonably workmanlike manner and that the home is fit for habitation, arises impliedly in a contract between a builder-vendor and the first purchaser of the newly constructed home"), *appeal denied*, 318 A.3d 96 (Pa. 2024); **Latona Trucking, Inc. v. E.R. Linde Constr. Corp**., 350 A.3d 127, 2025 WL 2795886, at *3 (Pa. Super. filed Oct. 1, 2025) (non-precedential memorandum) (stating, "every contract for work or services contains a duty to perform skillfully and in a workmanlike manner as a matter of law, whether or not the contract expressly states such a duty"

amended complaint, excepting the allegation related to the damaged excavator, aver that Morton Buildings failed to perform certain work in a workmanlike manner (*i.e.*, defective installation of windows, flooring, ceiling, and siding components) and, as a result, Appellant incurred damages. The construction contract contained a specific promise, in the form of a warranty, by Morton Buildings that the work performed in connection with the construction of the single-family home would be done in a workmanlike manner. This obligation or duty to perform construction tasks in a workmanlike manner was expressly created by the parties under the terms of their contract. As such, with the exception of the claim for damage done to the excavator, Appellant alleged facts which, if true, asserted viable breach of contract and breach of warranty claims arising from the terms of the parties' construction contract.[7] *See Bruno*, 106 A.3d at 63, 69; *see also Spiritrust*, 314 A.3d at 908-909.

We now examine whether Appellant alleged a viable claim sounding in negligence. Appellant's claim that a vehicle owned and operated by Morton Buildings "struck" his excavator and damaged the excavator is a claim based upon negligence because this claim exists independent from, and without

_____

(*citing Huling v. Henderson*, 29 A. 276, 278 (Pa. 1894) and *Ferguson v. Burge*, 166 A.2d 288, 290 (Pa. Super. 1960)).

[7] Appellant concedes that all of his claims, absent the claim related to the excavator are based upon the contractual agreement between Appellant and Morton Buildings (*see* Appellant's Brief at 23) and, as such, raise claims for breach of contract and breach of warranty.

regard to, Morton Buildings' duties under the terms of the contract. ***See Bruno***, 106 A.3d at 70 (explaining that, "[A] negligence claim[, *i.e.*, a claim alleging the breach of a broader social duty arising independently of a contract,] based on the actions of a contracting party in performing contractual obligations is not viewed as an action on the underlying contract itself, since it is not founded on the breach of any of the specific executory promises which comprise the contract. Instead, the contract is regarded merely as the vehicle, or mechanism, which established the relationship between the parties, during which the tort of negligence was committed."). The fourth amended complaint alleged a duty that arose independently from the parties' construction contract, a breach of that duty, a loss caused by that breach, and damages associated with that loss. ***See Rogers v. Thomas***, 291 A.3d 865, 874 (Pa. Super. 2023) (stating, "[f]our elements are necessary to establish a cause of action in negligence: a duty or obligation recognized by law; breach of that duty by the defendant; a causal connection between the defendant's breach of that duty and the resulting injury; and actual loss or damage suffered by the complainant"), *appeal denied*, 304 A.3d 706 (Pa. 2023). Therefore, Appellant's fourth amended complaint alleged a viable claim sounding in negligence.

The question before us, for purpose of reviewing the October 25, 2024 order that sustained Morton Buildings' preliminary objection in the nature of a demurrer, is whether or not the allegations contained in Appellant's fourth amended complaint were legally sufficient to set forth causes of action under

which Appellant may recover. When viewing the material facts set forth in the fourth amended complaint, and all reasonable inferences that may be drawn from those facts, as true, we find that Appellant has sufficiently raised claims for breach of contract and negligence.

Although we have concluded that Appellant's fourth amended complaint pleads viable tort and breach of contract claims, it appears that the form of his pleading contravened Pennsylvania Rule of Civil Procedure 1020(a). Rule 1020(a) permits a plaintiff to raise more than one cause of action cognizable in a civil action against the same defendant but "[e]ach cause of action and any separate damage related thereto shall be stated **in a separate count** containing a demand for relief."[8] Pa.R.Civ.P. 1020(a) (emphasis added). In his fourth amended complaint, Appellant failed to raise his causes of action for breach of contract and negligence in separate counts. Morton Buildings did not, however, challenge Appellant's pleadings on the ground that the fourth amended complaint failed to conform to Rule 1020(a). Instead, Morton Buildings challenged the pleadings on the ground that the allegations contained therein were legally insufficient (a demurrer) to set forth claims under which Appellant may recover. Based upon our discussion *supra*,

_____

[8] We find the characterization of Appellant's pleadings as raising only a cause of action for negligence for the purpose of applying the gist of the action doctrine to be misplaced. As this Court explained in **Swatt**, *supra*, the gist of the action doctrine does not "convert a plaintiff's contract claims into tort claims" and "contract claims never were, and are not now, subject to the gist-of-the-action doctrine." **Swatt**, 342 A.3d at 51.

- 17 -

wherein we found that Appellant sufficiently raised claims for breach of contract and negligence, we find the trial court erred as a matter of law in sustaining the preliminary objections in the nature of demurrer. As such, we are constrained to vacate the October 25, 2024 order that sustained the preliminary objection in the nature of a demurrer and remand this case for further proceedings.

Our decision does not excuse Appellant's failure to adhere to Rule 1020(a) by stating the causes of action (*i.e.*, breach of contract and negligence) **in separate counts.** The trial court, in sustaining the preliminary objection in the nature of a demurrer, was not asked, nor did it consider, whether Appellant's fourth amended complaint should be dismissed for failure to adhere to Rule 1020(a). *See* Pa.R.Civ.P. 1028(a)(2) (permitting a party to raise a preliminary objection to any pleading on the ground that the pleading failed "to conform to law or rule of court"). On remand, Appellant may seek leave of court to file a fifth amended complaint pursuant to Pennsylvania Rule of Civil Procedure 1033(a). *See* Pa.R.Civ.P. 1033(a) (stating, "[a] party, either by filed consent of the adverse party or by leave of court, may at any time change the form of action, add a person as a party, correct the name of a party, or otherwise amend the pleading"). While it is within the trial court's discretion to determine whether, or not, Appellant is permitted to file an amended complaint, we suggest that the trial court permit one more amendment so Appellant can plead each cause of action under a separate

count.[9]  ***See Hill v. Ofalt***, 85 A.3d 540, 557 (Pa. Super. 2014) (explaining that, the right to amend should be liberally granted and not be withheld where there is "**some reasonable possibility** that amendment can be accomplished successfully" but there may come a time where "to extend leave to amend would be futile").

Order vacated.  Case remanded.  Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

6/18/2026

---

[9] We remind Appellant that his current pleadings represent his **fourth** attempt to, *inter alia*, conform those pleadings to Rule 1020(a).